Counsel for the appellant, you may proceed. Thank you, Your Honors. My name is Carl Gunn. I'm representing Mr. Gongora. I'm going to try to reserve two minutes for rebuttal. I'll try to keep track of my time. I'm also going to try to split my time between the two issues, but I'll start with the CARES Act issue unless the court prefers differently. What's at issue in that issue is how to balance two important interests. On the one hand, we have how to protect against the COVID pandemic. On the other hand, there's the interest in having solemn court proceedings where a court or a judge needs to evaluate a person take place in the solemn courtroom setting where the judge can actually see that person as a full person, not just on a video camera. Both of those interests are important. One could just give in to COVID completely and say, we're going to do everything by video. One could say, we're just going to bite the bullet, take our losses, and not give in to COVID at all. One could choose something in between. But the choice is for Congress. And Congress made a choice which the courts are bound to respect. And the choice Congress made was, at least with respect to pleas and sentencing, to allow those only when there was a case-specific finding that the interests of justice were necessary, allowed video in that case. Well, counsel, isn't that what happened here? There was a finding. But it was plainly wrong, Your Honor. The finding here was that Mr. Ngorongoro might serve more time in prison than he would otherwise. Well, counsel, let me ask you, what should the district judge have done? Should the district judge have just for four and a half years? Probably not for four and a half years, Your Honor. But he should have deferred it for some period of time, unless there were other interests of justice he might have found. The government makes this claim that, well, gee, he could find these interests that were suggested in the pre-sentence report about needing BOP programming and something like that. The problem with that argument is the judge didn't find that was the reason. He didn't have the information in the pre-sentence report before him, at least at the time of the plea. So that one doesn't fly as a justification here. Well, counsel, didn't the judge say that it will satisfy the objectives of sentencing under the guidelines in 3553? He did, Your Honor. And that, of course, is one of the things the government points out. I don't think that flies. First of all, if you count them and break out the subsections, there's probably 10 different objections of sentencing out there, only one of which has anything to do with starting your sentence now. Second of all, the judge, even if he could have made that, well, second of all, I think the judge has to be more specific. Because interest of justice has to be a case-specific finding. And third, he didn't have any such information in front of him, at least at the time of the plea. So that can't have been the basis for the finding then. And the finding is just identical at sentencing. So you really can't assume that's his basis. Well, rehabilitation is a 3553 factor. And sitting in a county jail or wherever your client was beforehand, he's not receiving any programming. So that's obvious. Like, once you get to sentencing, you BOP, you'll get the programs and everything you need for a rehabilitation. Well, I think there's a lot of people who disagree that you get much rehabilitation, even in prison, Your Honor. That's a different question. But I think. At least they attempt to. Yeah, I guess what I'm saying is the judge had to make that specific finding, not just a general catch-all reference. And the problem is it really smacks, and I don't mean any disrespect to the district judge, it sort of smacks of this rote recitation that he had available for every case. And I just. Can we take into account the judge's authorization of the defendant's request to participate in the substance abuse treatment program? Except if the judge had said, I'm doing it because the interests of justice mean he should be able to participate in the substance abuse program he wants, yes. But it has to be specific like that. And the judge didn't have that information at the time of the plea. So it can have been the basis for the finding. And when the finding at sentencing mirrors, the exact language mirrors what he said at the plea, I don't think you can read that into it. But in other parts of sentencing, we don't require that level of specificity. I think it's rule 35. We don't have to. We don't require the judge to make every objection if it's obvious from the record. So why can't we do that here? I think under the CARES Act, where it says you need a case-specific finding that's in the interest of justice in that case, I guess I think you do, Your Honor. And especially, the problem is going back to the plea versus the sentencing, he didn't have any idea that there was any interest or concern like that. So I don't think that works for the government here. So counsel, let me ask you. Assuming for purposes of argument that we agree with you that there was an error here, how does this affect his substantial rights? There's no argument from you at all that anything at all would have changed had this been done in person as opposed to remotely. That goes to the other issue in the briefs about whether it's per se prejudicial. Your Honor, you have four, I think five really, circuits that say it's per se prejudicial, and only one that suggests it's not. And I think the problem here is it's just such an intangible. How do you evaluate what difference it would have made for the judge to actually see Mr. Gongora in person, see his body language, read his emotions more than he might otherwise have read them? I think that's why it's per se prejudicial, and that's why four circuits have expressly held that, and a fifth circuit, the sixth in the Williams case, basically rejects a harmless error analysis just because videoconferencing doesn't work. Has this circuit ever adopted a per se analysis in the context of, in this context? No, the one case in this circuit that I found is the Becerra case, which found that with respect to the importantly solemn proceeding of reading jury instructions in open court. But so do we have any authority to deviate from circuit precedent when it comes to circuit precedent on plain error? Well, you're not deviating from anything because there's no circuit precedent on court. You're deciding whether to follow four or five circuits that have held it's per se prejudicial, or the second circuit, I believe it is, that held it's not. Yeah, but we have a standard here. We have a standard for applying a plain error test. Sometimes yes, sometimes no. In the Becerra case, the court held it was per se prejudicial. So it depends on what it is that the error is. I was going to address the gun enhancement a little bit unless the court has other questions on the CARES Act. There really is, the government, you have a couple of cases that I cite. You have four or five cases the government cites. In none of the cases that the government cites was there anything like the evidence in support of an alternative purpose here. The one case where there was some evidence of alternative purpose was the Heldberg case. The Heldberg case, the district court expressly said, I don't find what the defendant's saying about his reasons for the gun credible. Here, look at what you've got. You have Mr. Gungor's statement that he had the gun for protection. You have the statement of a victim in a prior case that said he consistently carried a gun for safety all the time. You have the police bulletin described in the psychiatric evaluation that says the police were warned to keep a lookout on him for having a gun because he always carried a gun. You have the psychiatric evaluation that has a long discussion of how he's paranoid and scared and people are shooting at him all the time, so he always has a gun for protection. You have overwhelming evidence here that was not in any of the cases the government cited. I'm down to my two minutes, if I was going to save, unless the court has questions. No questions at this time. Thank you, counsel. We'll hear from the government. Thank you. Good morning. May it please the court. My name is Tony Pataka. I am an assistant United States attorney with the Eastern District of California, and I represent the United States. I'd first like to start with a question that I believe Judge Bumate asked in Mr. Gunn's response, and that was whether the CARES Act requires a more specific finding. And I submit that it does not. I would equate it to a finding that judges make on a daily basis in regards to sentencing under Rule 35. And the record in this case provides a basis upon which this court can find and assess the reasonableness of the district court's decision to proceed forward by video and teleconference. As Your Honor noted, there are three specific reasons that the district court stated on the record in this case. One was to prevent the defendant from remaining incarcerated longer than necessary. Two, the sentencing guidelines. And three, Section 3553. And in this case, there are clearly reasons that support those findings. In the PSR, the defendant stated that he wanted to attend the drug treatment program. He stated that he wanted to complete his GED and attend auto body classes. Those are all reasons that support 3553 and the sentencing guidelines. And there are also cases that support those findings. In United States v. Almeida, video conference was approved to allow the defendant to receive medical care. United States v. Rodriguez-Rios, a memorandum by this court, an interest of justice finding was to allow the defendant to participate in BOP programming. A memorandum disposition? Yes, Your Honor. Which is not precedential? That's correct. All right. And in the United States v. Rodriguez-Monserrat, there the court specifically failed to make an interest of justice finding. And the circuit court still noted that it did not amount to error or an effect on substantial rights. And so that leads me to the third prong of the plain error analysis. And I know that- Before you get there, what are we to make of the district court's analysis of not being incarcerated longer than necessary? There is a five-year man-min that he was subject to. So I mean, a couple of weeks, months would not touch close to getting to that point. So do we just disregard that ruling or is that actually correct? I think in retrospect, it was erroneous, but at the same time, given the uncertainty of the pandemic, I think district courts were struggling with that uncertainty. And it's reflected in a number of the cases that the defense cited in their brief for the proposition that time served sentences, or I'm sorry, video conferencing is not allowed when a time served sentence is impossible or unlikely. In those cases, they were early pandemic decisions. For instance, in the United States versus Emory, that was the defense requested an advancement in sentencing from May 4th. And that decision was in April. Only, I'm sorry, the court eventually held sentencing by video conference on May 4th. So in a short time span, the court's view on the CARES Act evolved. In the United States versus Matheson, the defendant wanted to be sentenced by video and the court initially denied that request in June of 2020. Four months later, the court held sentencing by video conference and sentenced the defendant to 120 months in prison. Again, nothing changed within that time period except for the continuing uncertainty of the pandemic. But in that case, was there a mandatory minimum? I don't recall, Your Honor. So I take your argument, even if the district court was erroneous, that that finding wasn't sufficient to meet the interest of justice. It's the other findings of, in the interest of 3553 and sentencing guidelines will save it. Yes, Your Honor. But you're not conceding that point, are you? I mean, there's a difference between looking back and saying, in retrospect, it was erroneous. But at the time, the question is, I think we have to decide as to whether it was erroneous at the time. I am not conceding that point, Your Honor, just because I skeet lately on that issue, just because in retrospect, it's much easier to say, yes, it was erroneous. But at the time, the uncertainty of the pandemic, Mr. Gongora was in county jail. Fresno County Jail is particularly not a nice place to remain incarcerated and frequently defendants are given credit for that time. And so I think there was an interest in this case, in most cases, that defendant received the BOP program. Let me phrase the question this way. At the time, was it a reasonable decision by the district court to say that in order, the interest here that justifies doing this remotely is the fact that it may, in fact, prevent him from serving time unnecessarily? Yes, because there are several different factors that may have actually resulted in a sentence below the mandatory minimum that could have been imposed in that case or this case. But nonetheless, I don't believe there's any effect on the defendant's substantial rights in this case. I'm sorry, what were those reasons? Safety valve or something? Safety valve for 5K, Your Honor. Oh, 5K. I think he was not safety valve eligible, but. Safety valve eligibility was probably not possible in this case, given the firearm. That's saying 5K could have potentially got him below the 5K. Yes, Your Honor. Mr. Gongora consented to these proceedings. That's reflected in the record at ER 11 and 54 through 55. The record is clear that he consulted with counsel. The record is clear that he waived his in-person appearance. And so there's nothing in the record, and the defense puts forth nothing to show that he would not have decided to plead guilty or be sentenced by videoconference had this error not occurred. And so he clearly could not meet and fulfill the third prong of the plain error analysis. Unless the court has any questions, I'll move to the second issue on appeal, which is the gun enhancement. Again, the plain error standard applies here. And when considered in combination with the standard for the enhancement in this case, which the defendant must show that it was clearly improbable that he possessed the firearm in connection with the drug trafficking offense. He cannot show that. The defendant's statement that he possessed the firearm for protection is consistent with drug trafficking. And this court has held in prior decisions that that is so. In the United States v. Johnson, in the United States v. Willis, this court has said that because guns are used in many drug transactions, it may be reasonably inferred that an armed possessor of drugs has something more in mind than mere personal use. Drug trafficking is a dangerous business. Mr. Goncora. What about the Heldberg case that counsel mentioned? Yes, Your Honor. I believe that the facts in this case present a stronger case than those in Heldberg. The defendant in Heldberg was crossing the border. He had a smaller amount of narcotics in his possession. The firearm was located in his car, in the trunk, unloaded in a briefcase. Here, you have stronger facts in that Goncora was in possession of a loaded firearm. He had three separately wrapped plastic bags of nearly 90 grams of methamphetamine in a backpack where police observed him getting out of a car. The backpack had a loaded magazine. It had loose rounds of ammunition and the methamphetamine. And he was in close proximity or arrested in close proximity to the backpack. Counsel, I realize our circuit law establishes almost a presumption, if you will, that traffickers who are carrying weapons or they're using them in connection with a drug offense. But nevertheless, there's evidence here in terms of the psychiatric evaluation, the fact that his, well, mostly that. He's in a house with 11 cameras. He's got, I mean, I understand his line of work is inherently dangerous, but it seems to me that this is more than just this man is in a dangerous line of work. That is, he's got a, it's almost a psychiatric condition. I mean, even paranoid sometimes have enemies, right, as the saying goes. And this is not, I mean, I wonder if in this case, this doesn't satisfy the standard, what would, given the evidence we have here about, he's hyper-alerted baseline, he readily perceives threats in his environment. Am I going to run into an enemy? All right, I mean, it's not, all this isn't necessarily related to his line of work, if you will. And of course, his line of work is more than drug trafficking. I mean, he's a gang member. But that's not all of what they do. And I mean, he's, it just seems like there's a substantial amount of evidence here that your colleague has pointed to that might effectively rebut the presumption. I believe I'm out of time, but I answer the question. Yes, Your Honor. The information provided by Mr. Ngongora is, I believe, similar to the information of the statements provided in Heldberg, and the court placed little weight on the defendant's statements. And in this case, the standard is so high when combined with the presumption, if you will, and the plain error analysis that the defendant didn't object at the district court level. He said the enhancement, or his defense counsel at the lower level stated that application of the enhancement was technically correct. And even given all those additional facts that he provided, he still has to show that it is clearly improbable that he possessed a firearm for something other than drug trafficking, which he can't do. If he possessed the firearm, even for a small fraction of time, just for drug trafficking, the enhancement still applies, Your Honor. Thank you, counsel. Thank you. We'll hear for rebuttal from Mr. Gunn. Just for the sake of freshness, I'll start with three points on the gun matter, and then I did have a couple points on the CARES Act. First of all, Heldberg is different in a really important respect. In Heldberg, the district court expressly found, I don't believe the defendant. Here, the statement of Mr. Gongora that he had the gun for protection was quoted in the PSR, quoted by the government in the sentencing memorandum, and the court said, I adopt the findings of the PSR. Heldberg may have had less drugs. Look at the Grimaldo case, where the enhancement got reversed. Grimaldo, the defendant had more drugs and a scale. So I would submit that, and Grimaldo was a plain error case also, and the court found plain error. On the CARES Act, a couple points. Your Honor, Judge D'Boumbatier, I'm sorry, you noted the assortment analogy of Rule 32. The language in the CARES Act, it's in the appendix, I just looked at it, says fines for specific reasons that the plea or sentencing in that case cannot be further delayed. I think that language is stronger than what's in Rule 32, though I don't have Rule 32 in front of me. You know, the problem with this general reference to the objectives of sentencing under the sentencing guidelines in 3553A, that would make video conferencing okay in every case. You can always say that. So I don't think that can be good enough for that reason. In the cases that counsel cited, the Almeida case, this court's memorandum of disposition, Rodriguez-Rios, the Cohen case, where there were these other reasons such as that, there the court made a specific finding. I want to get this guy to BOP for treatment. This guy's not getting credit for his home detention. If the district court here had made that sort of specific finding, somehow been able to say that at the time of the plea before he even had the PSR, I don't think I'd be making this argument. What the district court was really meaning was the, was the, you know, I think he's gonna serve more time, frankly, I think he was just saying his rote things. You have a point here, I'm trying to read my writing. Oh, 5K, you're, 5K wasn't a basis here. This was a straight up plea with no plea agreement. There was no basis for thinking this defendant was gonna get a lower sentence than mandatory minimum for 5K, which counsel mentioned there. Thank you, counsel. Your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision. And we will hear argument next.
judges: O'SCANNLAIN, BUMATAY, Baker